UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURENCIO L. RODRIGUEZ,

        Petitioner,

    v.                                    CASE NO. 15-cv-11155
                                 HON. GEORGE CARAM STEEH

ERICA HUSS,

        Respondent.

_____/

**<u>OPINION AND ORDER DENYING THE AMENDED PETITION,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

## I. Introduction

Petitioner Laurencio L. Rodriguez is a state prisoner in custody of the

Michigan Department of Corrections.  In 2015, he filed a <u>pro se</u> habeas

corpus petition challenging his Michigan conviction and sentence of 450 to

840 months (37½ to 70 years) for second-degree murder, Mich. Comp.

Laws § 750.317.  <u>See</u> ECF No. 1.  Although petitioner's conviction was

affirmed on direct appeal, he requested a stay of his federal case so that he

could pursue additional post-conviction remedies in state court.  <u>See</u> ECF

No. 3.

      The Court granted petitioner's motion for a stay, <u>see</u> ECF No. 6, and

after petitioner unsuccessfully concluded state collateral proceedings, he

returned to federal court with a motion to re-open his federal case, see ECF No. 11, and a pro se amended petition, see ECF No. 11-1.

The amended petition raises the three claims that petitioner presented to the state courts on direct review and the three claims that he raised in the State's appellate courts on state collateral review.  Those six claims allege that:  (I) the trial court erred in denying petitioner's motion for a change of venue; (II) petitioner was denied his right to be present during a conference on juror questionnaires; (III) petitioner was denied effective assistance when defense counsel (A) failed to use all his peremptory challenges to excuse certain jurors and (B) failed to object to petitioner's absence from a conference on juror questionnaires; (IV) appellate counsel provided ineffective assistance when he failed to raise meritorious issues about trial counsel on direct appeal; (V) the State failed to prove the elements of second-degree murder beyond a reasonable doubt; and (VI) prosecutorial misconduct denied petitioner his right to a fair trial.  See Am. Pet. at pp. 4-9 (ECF No. 11-1, PageID.144-149).

The Court granted petitioner's motion to re-open his case, directed the Clerk of Court to serve the amended petition on the State, and ordered the State to file a response to the amended petition.  See ECF No. 13. Respondent Erica Huss, through the Michigan Attorney General, then filed

an answer in opposition to the petition.  See ECF No. 21.  She urges the

Court to deny the amended petition on grounds that habeas claims II, IV, V,

and VI are procedurally defaulted or meritless and the state court's decision

on claims I through III did not involve an unreasonable application of

Supreme Court precedent.  See id. at pp. i-iii and 75, PageID.2352-54,

2429.

Having reviewed the pleadings and the state-court record, the Court

agrees that petitioner is not entitled to the writ of habeas corpus.

Accordingly, the Court will deny the amended petition and a certificate of

appealability, but allow petitioner to proceed in forma pauperis if he appeals

this decision.

## II.  Background

Petitioner was charged with open murder:  first-degree, premeditated

murder and second-degree murder.  He was tried before a jury in

Shiawassee County Circuit Court.  The Michigan Court of Appeals briefly

summarized the facts as follows:

> Defendant's conviction arose from the July 2000 death of Rachel
> Scott, who was last seen alive on July 6, 2000.  The victim's badly
> decomposed body was discovered on July 20, 2000, under a pile
> of brush in a wooded area. The manner or cause of death could
> not be determined. Although defendant was considered a
> suspect, the case remained unsolved for several years.  In 2009,
> a witness came forward and implicated defendant in the victim's
> death.  Physical evidence corroborated the witness's claim that

defendant had placed the victim's body in the trunk of his car. A prison inmate also testified that defendant made statements implicating himself in the victim's death.

People v. Rodriguez, No. 307317, 2013 WL 3766591, at *1 (Mich. Ct. App. July 18, 2013) (unpublished). Petitioner's defense was that prosecution witness Jeremy Seger ("Seger") killed the victim, that he merely helped Seger move the body after the murder, and that Seger lied about petitioner's involvement in the crime.

On September 28, 2011, the jury found petitioner guilty of second-degree murder, see 9/28/11 Trial Tr. at p. 1409 (ECF No. 20-14, PageID.1833), and on November 4, 2011, the trial court sentenced petitioner to prison for 450 to 840 months with 207 days credit for time served. See 11/4/11 Sentence Hr'g Tr. at p. 42 (ECF No. 20-15, PageID.1880).

In an appeal of right, petitioner raised the following claim through counsel:

> Extensive, highly prejudicial pretrial publicity created a presumption of prejudice that denied defendant his right to a fair trial by a panel of impartial jurors. The trial court reversibly erred in (1) holding part of [the] jury selection outside defendant's presence and (2) in denying defendant a change of venue. Also, counsel's failure to exhaust his peremptory challenges on jurors who could not be impartial, denied defendant effective assistance of counsel. US CONST, AMENDS VI, XIV.

Defendant-Appellant's Brief on Appeal at i (ECF No. 20-16, PageID.1930).

The Michigan Court of Appeals rejected all three parts of this claim and affirmed petitioner's conviction in a per curiam opinion.  See Rodriguez, 2013 WL 3766591.  Petitioner then applied for leave to appeal in the Michigan Supreme Court, which denied petitioner's application on December 23, 2014, because it was not persuaded to review the question presented to the court.  See People v. Rodriguez, 495 Mich. 915; 840 N.W.2d 370 (2013).

On March 25, 2015, petitioner filed a motion for relief from judgment in the state trial court.  See Shiawassee County Register of Actions (ECF No. 20-1, PageID.280).  The motion challenged (1) the sufficiency of the evidence supporting petitioner's conviction, (2) trial counsel's performance, and (3) the prosecutor's conduct.  See Mot. for Relief from J. (ECF No. 20-18, PageID.2153).

On March 26, 2015, while the post-conviction motion remained pending in the state trial court, petitioner filed his initial habeas corpus petition and a motion to stay the proceedings and hold his petition in abeyance.   The grounds for relief in the initial habeas petition were:  (1) petitioner was innocent of the crime for which he was convicted, (2) his court-appointed trial attorney provided ineffective assistance, and (3) the

State failed to establish the cause and manner of the victim's death.   See Pet. at pp. 6-9 (ECF No. 1, PageID.5-8).

In his motion for a stay, petitioner explained that he simultaneously filed a motion for relief from judgment in state court.  See Mot. to Stay at p. 5 (ECF No. 3, PageID.34).  He asked the Court to stay the federal proceeding and to hold his habeas petition in abeyance while he exhausted state remedies.  See id. at pp. 4-5, PageID.35-36.  On April 21, 2015, the Court granted petitioner's motion for a stay and ordered petitioner to file a motion to reopen this case and an amended habeas petition within ninety days of exhausting state remedies if he was unsuccessful in state court and wished to re-open this case.  The Court also closed this case for administrative purposes.  See Order (ECF No. 6).

Meanwhile, on April 10, 2015, the state trial court denied petitioner's motion for relief from judgment in a reasoned order.  The court stated that petitioner could have raised his three claims in the Court of Appeals and that he had failed to demonstrate "good cause" under Michigan Court Rule 6.508(D)(3) for failing to raise the claims on appeal.  See People v. Rodriguez, No. 11-1979-FC (Shiawassee Cty. Cir. Ct. Apr. 10, 2015); (ECF No. 20-19, PageID.2161-62).  The court also stated that to the extent

petitioner's claim about counsel was decided against him on appeal, the court would deny the motion on that basis as well.  See id.

In a pro se application for leave to appeal the trial court's order, petitioner alleged that:  (1) appellate counsel provided ineffective assistance when he failed to raise meritorious issues about trial counsel on direct appeal; (2) the State failed to prove the elements of second-degree murder beyond a reasonable doubt; and (3) prosecutorial misconduct deprived him of his right to a fair trial.  See Delayed Application for Leave to Appeal (ECF No. 20-20, PageID.2164-2215).   The Michigan Court of Appeals denied leave to appeal because petitioner had "failed to establish that the trial court erred in denying his motion for relief from judgment." People v. Rodriguez, No. 329410 (Mich. Ct. App. Dec. 21, 2015) (ECF No. 20-20, PageID.2163).

Petitioner raised the same issues in the Michigan Supreme Court. See Pro Per Application for Leave to Appeal (ECF No. 20-21, PageID.2217-2259).  On November 30, 2016, the Michigan Supreme Court denied leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." People v. Rodriguez, 500 Mich. 895; 887 N.W.2d 187 (2016).

On February 21, 2017, petitioner moved for an extension to file an amended habeas corpus petition because prison officials misplaced his legal work and his legal writer lost most of the files stored on his computer. See Mot. (ECF No. 8, PageID.47-52).  On July 14, 2017, the Court granted petitioner's request and gave him an additional ninety days to file a motion to re-open this case and an amended habeas corpus petition.  See Order (ECF No. 10).

On October 2, 2017, petitioner filed his motion to re-open this case (ECF No. 11) and his amended petition for the writ of habeas corpus (ECF No. 11-1), which raises the following issues:

I.     Did the trial court err in denying petitioner's motion for a change of venue?

II.    Was petitioner denied his right to be present during a conference on juror questionnaires?

III.   Was petitioner denied effective assistance of counsel when defense counsel (A) failed to use all his peremptory challenges to excuse certain jurors and (B) failed to object to petitioner's absence from the conference on juror questionnaires?

IV.    Was appellate counsel providing ineffective assistance of counsel when he failed to raise meritorious issues on direct appeal related to the ineffective assistance of trial counsel, which deprived petitioner of an evidentiary hearing to perfect crucial issues for his direct appeal, and is this deprivation a violation of due process and does it entitle petitioner to re-instatement of that appeal and an evidentiary hearing?

V.   Did the State fail to prove beyond a reasonable doubt the elements of second-degree murder and must petitioner's conviction be vacated?

VI.   Did prosecutorial misconduct deny petitioner his due process right to a fair trial?

Brief in Support of Pet. (ECF No. 11-1, PageID.154-55).[1]

The Court granted petitioner's motion to re-open this case and ordered the Clerk of Court to serve the amended petition on the State.  See Order (ECF No. 13).  On April 8, 2019, respondent filed her answer to the amended petition (ECF No. 21), and on September 16, 2019, petitioner file a reply to respondent's answer to the petition (ECF No. 25).

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "  Wilson v.

---

[1] Petitioner relies on his state appellate brief on direct appeal to support habeas claims I through III because he no longer possesses the briefs that he filed on direct appeal. See Brief in Support of Pet. for Writ of Habeas Corpus (ECF No. 11-1, PageID.165-66). Accordingly, the Court is treating petitioner's appellate brief on direct appeal as his habeas brief for purposes of claims I through III.

Sellers, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The

Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that
> contradicts the governing law set forth in [Supreme Court] cases"
> or "if the state court confronts a set of facts that are materially
> indistinguishable from a decision of [the Supreme] Court and
> nevertheless arrives at a result different from [Supreme Court]
> precedent."

Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor,

529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from [the Supreme] Court's decisions
> but unreasonably applies that principle to the facts of the
> prisoner's case." Id., at 413, 120 S.Ct. 1495.  The "unreasonable
> application" clause requires the state court decision to be more
> than incorrect or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495.
> The state court's application of clearly established law must be
> objectively unreasonable. Id., at 409, 120 S.Ct. 1495.

Id. at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating

state-court rulings,' and 'demands that state-court decisions be given the

benefit of the doubt[.]' " Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

and end citations omitted).  "A state court's determination that a claim lacks

merit precludes federal habeas relief so long as 'fairminded jurists could

disagree' on the correctness of the state court's decision."  Harrington v.

Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Thus, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254."  Saulsberry v. Lee, 937 F.3d 644, 648 (6th Cir.) (quoting Richter, 562 U.S. at 103), cert. denied, 140 S. Ct. 445 (2019).  "That's a 'high bar' to relief, which 'is intentionally difficult to meet.' "  Kendrick v. Parris, 989 F.3d 459, 469 (6th Cir. 2021) (quoting Woods v. Donald, 575 U.S. 312, 316 (2015)), petition for cert. docketed, No. 21-107 (U.S. July 27, 2021).

## IV.  Discussion

### A.  The Trial Court's Denial of Petitioner's Motion for a Change of Venue

Petitioner alleges first that the trial court erred when it denied his motion for a change of venue.  See Am. Pet. and Brief in Support of Pet. (ECF No. 11-1, PageID.144, 174).  Petitioner asserts that his case garnered extensive publicity in Shiawassee County, beginning in the year 2000, and that the case was the subject of numerous news articles, Internet postings, and public discussions.

According to petitioner, the pretrial publicity was pervasive and inflammatory.  See Defendant-Appellant's Brief on Appeal at p. 21 (ECF

No. 20-16, PageID.1955).  One article allegedly described petitioner's

criminal record, and another article allegedly quoted his mother as saying

that she believed petitioner was guilty.  See id. at p. 11, PageID.1945.

Petitioner argues that the adverse publicity created a presumption of

prejudice, and because the presumption of prejudice was not rebutted, he

was denied his due process right to trial by an impartial jury.  Id. at p. 20,

PageID.1954.

The Michigan Court of Appeals adjudicated this claim on the merits

on direct review. The Court of Appeals acknowledged that petitioner's case

was the subject of local media attention, but the court stated that the media

accounts were not so numerous, sensational, and inflammatory as to

warrant a finding that the entire jury pool was prejudiced against petitioner.

The Court of Appeals also noted that

> a jury satisfactory to both parties was seated.  Of the 12 jurors
> who decided the case, six had not heard anything about the
> case, and the remaining jurors had seen a few articles, but knew
> little about the case and agreed that they could disregard what
> they had heard and decide the case based on the evidence.

Rodriguez, 2013 WL 3766591, at *1.  The Court of Appeals concluded that

the trial court's denial of petitioner's motion for a change of venue was

within the range of reasonable and principled outcomes and that the trial

court did not abuse its discretion by denying the motion.  Id

### 1. Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees

the accused in a criminal prosecution "the right to a . . . trial, by an impartial

jury[.]" U.S. CONST. amend. VI.  This right is

"applicable to the States through the Due Process Clause of the Fourteenth

Amendment."  Parker v. Gladden, 385 U.S. 363, 364 (1966).

"The failure to accord an accused a fair hearing violates even the

minimal standards of due process," Irvin v. Dowd, 366 U.S. 717, 722

(1961), and "adverse pretrial publicity can create such a presumption of

prejudice in a community that the jurors' claims that they can be impartial

should not be believed."  Patton v. Yount, 467 U.S. 1025, 1031 (1984)

(explaining the holding in Irwin).  Nevertheless,

> [t]he category of cases where prejudice has been presumed in
> the face of juror attestation to the contrary is extremely narrow.
> Indeed, the few cases in which the [Supreme] Court has
> presumed prejudice can only be termed extraordinary, see
> generally Murphy v. Florida, 421 U.S. 794, 798–99, 95 S. Ct.
> 2031, 44 L.Ed.2d 589 (1975), and it is well-settled that pretrial
> publicity itself—"even pervasive, adverse publicity—does not
> inevitably lead to an unfair trial," Nebraska Press Ass'n v.
> Stuart, 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976).
> As the Court observed in Murphy, "indicia of impartiality" on the
> part of a jury have thus far been disregarded only in those cases
> "where the general atmosphere in the community or courtroom
> is sufficiently inflammatory."  421 U.S. at 802, 95 S. Ct. 2031.

DeLisle v. Rivers, 161 F.3d 370, 382 (6th Cir. 1998); see also Foley v. Parker, 488 F.3d 377, 387 (6th Cir. 2007) ("Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community.").  Even in cases of presumptive prejudice, "there can be no constitutional infirmity if the defendant actually received a trial by an impartial jury."  DeLisle, 161 F.3d at 382.

When the partiality of an individual juror is at issue, the question "is plainly one of historical fact:  did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."  Patton, 467 U.S. at 1036.   "The trial court's resolution of these questions is entitled to a presumption of correctness because (1) "the determination has been made only an often extended voir dire proceeding designed specifically to identify biased veniremen" and (2) "the determination is essential one of credibility, and therefore largely one of demeanor.  . . . "  Id.

This reliance on the trial court's judgment "makes good sense" because "[t]he judge of that court sits in the locale where the publicity is said to have had its effect and brings to his evaluation of any such claim his own perception of the depth and extent of news stories that might influence

a juror."  Mu'Min v. Virginia, 500 U.S. 415, 427 (1991); see also Skilling v. United States, 561 U.S. 358, 386 (2010) ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty.").  "A federal court can overturn a trial judge's finding of juror impartiality only where manifest error is shown.  Trimble v. Bobby, 804 F.3d 767, 778 (6th Cir. 2015) (citing Patton, 467 U.S. at 1031).

### 2.  Application

The state trial court made a thorough attempt to select an impartial jury in petitioner's case.   The court held a hearing on petitioner's motion for a change of venue and then took the motion under advisement because the court wanted to ascertain whether it was possible to seat a jury that could fairly determine the issues, including petitioner's guilt or innocence.

The trial court proposed a procedure that would include: (1) drafting a written questionnaire for the prospective jurors to complete to determine whether any jurors had a predetermined view as to what the verdict ought to be; (2) voir dire of jurors individually, if necessary, to explore what a person might know about the case; and (3) voir dire in the courtroom.  The

court invited the parties to submit questions to be included on the juror questionnaires.   See 8/4/11 Mot. Hr'g Tr. at pp. 16-23 (ECF No. 20-3, PageID.387-394).  At a subsequent settlement conference, petitioner approved of this procedure.  See 9/7/11 Settlement Conference at p. 14 (ECF No. 20-4, PageID.409).

The jury selection that followed occurred over the course of three days.  During the first and second days, the court brought in groups of prospective jurors, introduced them to the case, and asked them to complete questionnaires regarding any information that they might have about the case.  See 9/13/11 Trial Tr. (ECF No. 20-6) (jury panels 5 and 6 sworn and given questionnaires); 9/14/11 Trial Tr. (ECF No. 20-7) (jury panels 1 and 2 sworn and given questionnaires).

After all the prospective jurors were sent home on the second day, the attorneys, the court, and the court's law clerk reviewed the completed questionnaires.  They agreed by consensus that nineteen individuals should be rejected due to hardship, medical issues, or knowledge and state of mind regarding the case.  See 9/14/11 Trial Tr. at p. 71 (ECF No. 20-7, PageID.495).

On the third day, the remaining individuals returned to the courtroom, and the court conducted voir dire, which included individual questioning of

a few prospective jurors outside the presence of the other jurors.  The court

excused some individuals for cause, and the attorneys used peremptory

challenges to excuse other individuals.

Before the attorneys used all their peremptory challenges, they

approved of fourteen jurors who were seated in the jury box.  The trial court

then asked those fourteen jurors whether there was any reason why they

could not be fair to both parties and to apply the law to the facts.  When

none of the jurors responded, the court announced that they had a jury.

See 9/15/11 Trial Tr. at pp. 266-67 (ECF No. 20-8, PageID.690-91).  The

trial court subsequently denied petitioner's motion for a change of venue

because "the process worked" and there was no need for a change of

venue.  See id. at pp. 272-73, PageID.696-97.

Petitioner concedes that eight of the twelve jurors who deliberated his

case did not say they were exposed to media coverage of his case.  See

Defendant-Appellant's Brief on Appeal at pp. 19-20 (ECF No. 20-16,

PageID.1953-54) (listing (Gloria Nemets, Pamela Powelke, Carol Vitu,

Marcia Ustishen, Zachary Nicholson, Gail Teeples, Virginia Thomas, and

Kathleen Warfle as the eight jurors who "did not expressly state that they

were exposed to media coverage of the case").  Further, the record does

not support the contention that overwhelmingly negative media coverage affected the other four jurors.

Lynea Nichols said that she saw the headline to a news article about the case on the previous day, but that she did not read the article and that the article would not influence her or affect her ability to be a fair juror.  See 9/15/11 Trial Tr. at pp. 117-18 (ECF No. 20-8, PageID.541-42).  Renee Jacobi apparently indicated on her questionnaire that she had heard or read about the case, but she also indicated that her knowledge of the case would not affect her ability to decide the case based on the evidence at trial, as opposed to what she may have heard or read.  See id. at p. 159, PageID.583.

Diane Moore had read a small newspaper article about the case during the week before trial.  That was the first time she heard about the case, and she said that she could put the article out of her mind and focus on the facts in petitioner's case if she were seated as a juror.  See id. at pp. 230-31, PageID.654-55.  She also said that there was no reason why she could not apply the law to the facts and that she could withstand the rigors of being a juror.  See id. at pp. 233-34, PageID.657-58.  Casey Knowlton also had heard or read about the case, according to her questionnaire, but

she, too, said it would not affect her ability to decide the case based on the evidence at trial.  See id. at p. 159, PageID.583.

What is more, before the trial court concluded voir dire, it asked the seated jurors whether anyone was unable to give both parties a fair trial and decide the case by applying the law, as given to them by court, to the facts.  No one said that he or she could not be fair or could not apply the law to the facts.  See id. at pp. 259-60, PageID. 683-84.

Petitioner has failed to show that a presumption of prejudice pervaded his trial due to pretrial publicity or that the individual jurors who decided his case were actually prejudiced and unable to render a fair verdict based on the evidence at trial.  In addition, the state courts' findings of juror impartiality are entitled to deference, and Petitioner has not demonstrated a manifest error in those findings of impartiality.   Because he was not denied a fair trial by an impartial jury, he is not entitled to relief on his first claim.

## B.  Petitioner's Absence from a Conference on Juror Questionnaires

Petitioner alleges next that he was denied his right to be present during a conference on the questionnaires that the prospective jurors were asked to complete before voir dire.  See Am. Pet. and Brief in Support (ECF No. 11-1, PageID.145, 175).  The questionnaires inquired about the

prospective jurors' knowledge of the case and the people involved with the case.  After the jurors completed the questionnaires, the attorneys, the trial court, and the trial court's law clerk reviewed the questionnaires and eliminated some individuals.  For some unknown reason, petitioner was not present during that process.

Petitioner claims that he had a right to give advice, make suggestions, or reject his attorney's decisions about the questionnaires and that he was unable to exercise those rights because he was absent from the conference on the juror questionnaires.   Petitioner also claims that he did not waive the right to be present and that the error was not harmless. See Defendant-Appellant's Brief on Appeal at pp. 12-16 (ECF No. 20-16, PageID.1946-1950).

The Michigan Court of Appeals reviewed petitioner's claim for "plain error" affecting his substantial rights because he did not preserve the issue for appellate review by objecting in the trial court.  See Rodriguez, 2013 WL 3766591, at *2.  Respondent, therefore, argues that petitioner procedurally defaulted his claim.

### 1.  Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997).

Pursuant to the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  In this Circuit, "[a] habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.' "  Theriot v. Vashaw, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting Wheeler v. Simpson, 852 F.3d 509, 514 (6th Cir. 2017) (quoting Guilmette v. Howes, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)), petition for cert. docketed, No. 20-8063 (U.S. May 18, 2021).

The relevant state procedural rule here is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.' "  People v. Cain, 498 Mich. 108, 114; 869 N.W.2d 829, 832 (2015) (quoting People v. Grant, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994)).  "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by

far the best time to address a defendant's constitutional and

nonconstitutional rights.' " People v. Carines, 460 Mich. 750, 764–65; 597

N.W.2d 130, 139 (1999) (quoting Grant, 445 Mich. at 551; 520 N.W.2d at

130).

Petitioner violated this issue-preservation rule by not objecting in the

trial court to his absence from the conference on the juror questionnaires.

In fact, after the trial court and defense counsel explained what happened

at the conference, he had no questions or objections to the procedure.  See

9/14/11 Trial Tr. at pp. 72-74 (ECF No. 20-7, PageID.496-98).  Thus, the

first procedural default factor is satisfied.

The Michigan Court of Appeals reviewed petitioner's claim for "plain

error" due to petitioner's failure to preserve his claim for appeal by objecting

in the trial court.   A state court's plain-error review is considered such an

impediment to merits review as to be enforcement of a procedural rule.

Gibbs v. Huss, __ F.3d __, __, No. 20-1973, 2021 WL 3855663, at *5 (6th

Cir. Aug. 30, 2021) (citing Williams v. Burt, 949 F.3d 966, 973 (6th Cir.),

cert. denied, __ U.S. __, 141 S. Ct. 276, 208 L.Ed.2d 38 (2020));  accord

Theriot, 982  F.3d at 1004 (stating that "a state appellate court's review for

plain error is enforcement of a procedural rule"); Hinkle v. Randle, 271 F.3d

239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for

plain error as the enforcement of a procedural default.").  The second

procedural default factor is satisfied.

The third procedural default factor requires a determination of

whether the state procedural rule is an adequate and independent state

ground for denying review of a federal constitutional claim.  The Sixth

Circuit Court of Appeals has determined that "Michigan's

contemporaneous-objection rule 'constitutes an adequate and independent

state ground for foreclosing federal review.' "  Theriot, 982 F.3d at 1004

(citing Taylor v. McKee, 649 F.3d 446, 451 (6th Cir. 2011)).  Thus, the third

procedural-default factor is satisfied.

### 2. Overcoming the Procedural Default

"A state prisoner may overcome the prohibition on reviewing

procedurally defaulted claims if he can show 'cause' to excuse his failure to

comply with the state procedural rule and 'actual prejudice resulting from

the alleged constitutional violation.' "  Davila v. Davis, 137 S. Ct. 2058,

2064-2065 (2017) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)).

"[T]he existence of cause for a procedural default must ordinarily turn on

whether the prisoner can show that some objective factor external to the

defense impeded [his] efforts to comply with the State's procedural rule."

Murray v. Carrier, 477 U.S. 478, 488 (1986).  A prisoner can establish an

objective impediment to compliance with a procedural rule by showing (i)

the factual or legal basis for a claim was not reasonably available, (ii) some

interference by officials, or (iii) ineffective assistance of counsel.  Id.

### a.  Trial Counsel as "Cause"

Petitioner has raised an independent claim which alleges that trial

counsel was ineffective for failing to object to his absence from the

conference on juror questionnaires.  See Am. Pet., Claim III.B. (ECF No.

11-1, PageID.146), and Defendant-Appellant's Brief on Appeal at p. 22

(ECF No. 20-16, PageID.1956).   As part of that argument, petitioner

alleges that, if necessary to reach the issue of his exclusion from a portion

of the jury selection, counsel was constitutionally ineffective in failing to

object.  See Defendant-Appellant's Brief on Appeal at p. 23 (ECF No. 20-

16, PageID.1957).

"Ineffective assistance of counsel . . . is cause for a procedural

default."   Carrier, 477 U.S. at 488; see also Hodges v. Colson, 727 F.3d

517, 530 (6th Cir. 2013) ("Ineffective assistance of counsel can constitute

cause for a procedural default.").   "Not just any deficiency in counsel's

performance will do, however; the assistance must have been so

ineffective as to violate the Federal Constitution."  Edwards v. Carpenter,

529 U.S. 446, 451 (2000); see also Davila, 137 S. Ct. at 2062 ("[A]ttorney

error does not qualify as 'cause' to excuse a procedural default unless the error amounted to constitutionally ineffective assistance of counsel."),

To prevail on his claim about trial counsel, petitioner must show that trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Petitioner's trial attorney could have concluded that petitioner was not needed at the discussion on the juror questionnaires and that his presence might even be counterproductive.  Defense counsel also could have concluded that petitioner's right to a fair trial and to defend against the charge would not "be thwarted by his absence."  Kentucky v. Stincer, 482

U.S. 730, 745 (1987) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 108 (1934)).

Even if defense counsel was remiss for failing to seek petitioner's presence at the conference or for failing to object to his absence, the record indicates that defense counsel explained to petitioner what happened at the conference and that petitioner had no objections.  <u>See</u> 9/14/11 Trial Tr. at p. 72 (ECF No. 20-7, PageID.496).  The trial court subsequently asked defense counsel to read the names of the nineteen people that the attorneys and the court had eliminated during their conference about the questionnaires.

Defense counsel complied with the court's request.  <u>See</u> <u>id</u>. at 72-74, PageID.496-498.  Then he asked petitioner once again whether he had any objections, and petitioner answered, "No, sir."  <u>Id</u>. at 74, PageID.498.   If that were not enough, the trial court asked petitioner whether he had any questions about any of the excluded jurors or the process that the court and the attorneys had used.  Petitioner responded, "No, sir."  <u>Id</u>.

Because petitioner had no objection to the procedure used during the conference or to the prospective jurors who were excluded from serving on his jury, his absence from the conference was harmless.  Further, defense counsel's failure to object to petitioner's absence from the conference did

not amount to ineffective assistance, and petitioner has not shown "cause" for his procedural default.

### b.  Prejudice; Miscarriage of Justice

The Court need not determine whether the alleged constitutional error prejudiced petitioner because he has not established "cause" for his failure to comply with state law.  See Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000) (citing Smith v. Murray, 477 U.S. 527, 533 (1986)).  In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006) (citing Carrier, 477 U.S. at 496).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner claims to be innocent, but he has not presented the Court with any new and reliable evidence of actual innocence.  Therefore, a fundamental miscarriage of justice will not result from this Court's failure to adjudicate the substantive merits of petitioner's claim about his absence from the conference on juror questionnaires.  Petitioner's claim is procedurally defaulted.

## C. Trial Counsel

Petitioner's third claim alleges ineffective assistance of trial counsel. Petitioner alleges that his trial attorney was ineffective because counsel failed to (1) use all his peremptory challenges to excuse certain jurors and (2) object to petitioner's absence from the conference on juror questionnaires.   See Am. Pet. (ECF No. 11-1, PageID.146); Defendant-Appellant's Brief on Appeal at pp. 22-24 (ECF No. 20-16, PageID.1956-1958).  The Michigan Court of Appeals reviewed these claims on the merits and concluded that defense counsel was not ineffective.

### 1.  Established Federal Law

To prevail on a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  An

attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

An attorney's deficient performance is prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111-12 (quoting Strickland, 466 U.S. at 693).

### 2. Application of Strickland

#### a. Failure to Object to Petitioner's Absence at the Conference on Juror Questionnaires

The Court determined above that defense counsel was not cause for petitioner's failure to object to his absence from the conference on juror questionnaires. Petitioner, however, raises an independent claim about his trial attorney's failure to object to his absence from the conference. He claims that there was no strategic benefit to not having him present for each stage of jury selection.

Petitioner's free-standing claim of ineffective assistance of trial counsel must meet AEDPA's standard of review. Hall v. Vasbinder, 563 F.3d 222, 236-37 (6th Cir. 2009). Moreover, "[t]he standards created

by Strickland and § 2254(d) are both 'highly deferential,' and when the two

apply in tandem, review is 'doubly' so[.]" Richter, 562 U.S. at 105 (internal

and end citations omitted).  To determine whether trial counsel was

ineffective, the Court looks to petitioner's underlying claim that he had a

right to be present at the conference on juror questionnaires.

The Supreme Court's decision in United States v. Gagnon, 470 U.S.

522 (1985), has some relevance to the question before this Court. In

Gagnon, the Supreme Court considered the defendants' claim that they

had a right to be personally present at an in camera discussion involving

the trial court, a juror, and defense counsel.  The Supreme Court noted that

"the exclusion of a defendant from a trial proceeding should be considered

in light of the whole record."  Id. at 526-527 (citing Snyder, 291 U.S. at

115).  The Supreme Court then pointed out that the discussion at issue was

a short interlude in a complex trial.  The Supreme Court concluded that "the

conference was not the sort of event which every defendant had a right

personally to attend under the Fifth Amendment."  Id. at 527.

Petitioner's case is like Gagnon's case in that his attorney was present

at a  conference with the trial court on an issue involving a juror, but he was

absent from the conference.  Additionally, like the in camera discussion in

Gagnon, the conference on juror questionnaires was a short procedure in a

long trial, and it was not the sort of event that required his presence to ensure a fair trial.

In addition, as pointed out above, when the trial court explained what happened at the conference, petitioner stated on the record that he had no objection to the process or to the jurors that were excluded during the conference. Given this response, it is unlikely that petitioner would have gained any benefit from attending the conference.

To conclude, defense counsel's failure to object to petitioner's absence from the conference on juror questionnaires did not amount to deficient performance, and even if it did, the deficient performance did not prejudice petitioner. The state appellate court's rejection of petitioner's claim about trial counsel was objectively reasonable, and petitioner has no right to relief on the claim.

### b. Failure to Excuse Certain Jurors

Petitioner asserts next that defense counsel was ineffective for failing to use all his peremptory challenges to excuse four jurors. According to petitioner, the four jurors had been exposed to inflammatory and prejudicial media coverage and they ultimately deliberated his case. See Defendant-Appellant's Brief on Appeal (ECF No. 20-16, PageID.1956-58).

Defense attorneys have a responsibility to protect their clients' constitutional right to a fair and impartial jury by using voir dire to identify and ferret out jurors who may be biased against the defense.  Miller v. Francis, 269 F.3d 609, 615 (6th Cir. 2001).   Nevertheless, "[c]ounsel's actions during voir dire are presumed to be matters of trial strategy."  Id. To prevail on a claim about defense counsel's failure to exercise a peremptory challenge, a habeas petitioner must show that the juror was actually biased against him.  Id.

Jurors need not "be totally ignorant of the facts and issues involved." Irwin, 366 U.S. at 722; accord DeLisle, 161 F.3d at 382 ("[M]ere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint[.]"); Foley, 488 F.3d at 387 ("Negative media coverage by itself is insufficient to establish actual prejudice, and the existence of a juror's preconceived notion as to the guilt or innocence of the defendant, without more, is not sufficient to rebut the presumption of impartiality.")  "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  Irwin, 366 U.S. at 723.

The four jurors that petitioner claims his trial attorney should have excused were Lynea Nichols, Renee Jacobi, Diane Moore, and Casey Knowlton.  See Defendant-Appellant's Brief on Appeal (ECF No. 20-16, PageID.1958).  Petitioner states that these jurors may have been biased and may have lacked the ability to judge fairly.  See id.  But that is mere speculation.

Furthermore, as pointed out above in the discussion on pretrial publicity, Mrs. Nichols stated that she did not read the news article that she noticed on the previous day and that it would not influence her or affect her ability to be a fair juror.  See 9/15/11 Trial Tr. at pp. 117-18 (ECF No. 20-8, PageID.541-42).  Although she also indicated that she had been a victim of domestic violence, she did not think her experience would influence how she viewed or decided petitioner's case.  She assured the trial court that she could carry out the responsibilities of being a juror and apply the law to the facts without regard to her personal experience.  See id. at pp. 189-91, PageID.613-615.

Renee Jacobi wrote on her questionnaire that, although she had heard or read about the case, that would not affect her ability to decide the case based on the evidence at trial, as opposed to what she may have heard or read.  See id. at p. 159, PageID.583.   Diane Moore had read a

small newspaper article about the case a week before the trial.  But she said that was the first time she heard about the case and that she could put the article out of her mind and focus on the facts in petitioner's case if she were selected as a juror.  See id. at p.231, PageID.655.

Casey Knowlton also had heard or read about the case, according to her questionnaire, but she said that what she had heard or read would not affect her ability to decide the case based on the evidence at trial.  See id. at p. 159, PageID.583.  Although she was acquainted with some police officers, including a detective who was assigned to petitioner's case, she said that she would accept the testimony of whichever person she found more believable, regardless of whether or not the person was a police officer.  See id. at pp. 167-70, PageID.591-594.

Based on the record, Nichols, Jacobi, Moore, and Knowlton were not affected by the pretrial publicity, and they claimed to be able to decide petitioner's case on the facts presented at trial, without regard to their personal experiences or prior knowledge of the case.  Therefore, defense counsel was not ineffective for failing to use his peremptory challenges to exclude the four women, and the state appellate court's rejection of petitioner's claim was not objectively unreasonable.  Petitioner has no right to relief on his claim.

### D.  Appellate Counsel

The fourth habeas corpus claim alleges that petitioner's appellate attorney provided ineffective assistance when he failed to raise meritorious issues about trial counsel on direct appeal and failed to move for an evidentiary hearing.  Petitioner argues that appellate counsel should have asserted that trial counsel was ineffective for failing to (1) present a defense and investigate material witnesses, (2) permit petitioner to testify on his own behalf, (3) appear at a motion hearing and ensure that petitioner was present at the hearing, and (4) make crucial objections during trial and impeach the prosecutor's key witness.    See Am. Pet. and Brief in Support of Pet. (ECF No. 11-1, PageID.147, 177).

Respondent argues that this claim is procedurally defaulted, regardless of whether the claim is viewed as one about trial counsel or appellate counsel.  The Court understands the claim to be alleging that appellate counsel was ineffective for failing to raise claims about trial counsel.  Respondent, nevertheless, maintains that petitioner's claim about appellate counsel is procedurally defaulted because petitioner did not raise the claim about appellate counsel in his motion for relief from judgment.

The doctrine of exhaustion of state remedies requires state prisoners to give the state courts an opportunity to act on their claims before they

present their claims to a federal court in a habeas corpus petition.  See 28

U.S.C. § 2254(b)(1), (c); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

This requirement is satisfied if the prisoner "invok[es] one complete round

of the State's established appellate review process."  O'Sullivan, 526 U.S.

at 845 (emphasis added).

The Sixth Circuit Court of Appeals recently explained that, "[i]In states

such as Michigan with a two-tiered appellate system—that is, those that

have both an intermediate appellate court and a state supreme court—a

petitioner must present his claims to the state supreme court in order to

satisfy this exhaustion requirement."   Robinson v. Horton, 950 F.3d 337,

343 (6th Cir.) (citing O'Sullivan, 526 U.S. at 839–40, 845), cert. denied, 141

S. Ct. 658 (2020); see also Wagner v. Smith, 581 F.3d 410, 414-15 (6th

Cir. 2009) (explaining that, to properly exhaust state remedies, the

applicant must have fairly presented the factual and legal basis for each of

his claims to the state court of appeals and to the state supreme court

before raising the claims in a federal habeas corpus petition).

Petitioner presented his claim about appellate counsel in the

Michigan Court of Appeals and in the Michigan Supreme Court on state

collateral review.   The Court, therefore, considers petitioner's claim about

appellate counsel to be exhausted. The Court proceeds to review

petitioner's claim, and because the last state court to issue a reasoned order in petitioner's case did not adjudicate the claim on the merits, AEDPA is not applicable, and the Court's review is de novo.  Cassano v. Shoop, 1 F.4th 458, 466 (6th Cir. 2021).

### 1.  Clearly Established Federal Law

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in Strickland.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Instead, an appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues.  Robbins, 528 U.S. at 285 (citing Strickland, 466 U.S. at 687-91, 694).

"Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."  Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) (quoted in Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002)).  "To evaluate a

claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise." Henness v. Bagley, 644 F.3d 308, 317 (6th Cir. 2011).

### 2.  Application of the Law

#### a.  Failure to Present a Defense and Investigate Witnesses

Petitioner alleges that a week before trial, counsel still had not interviewed six material alibi witnesses who could have verified that petitioner was in a different town on the night of the crime.  According to petitioner, counsel also waited a week before the trial to review the police reports with petitioner and ultimately rested the defense case without presenting any evidence.  Petitioner contends that trial counsel was grossly unprepared for trial, that he lied to petitioner, and that he falsely assured petitioner that he could testify in his own defense and call witnesses to support his defense.  See Brief in Support of Pet. (ECF No. 11-1, PageID.182-84).

Defense counsel stated at a settlement conference six days before trial that he was ready for trial, but that he was still having problems locating witnesses.  He went on to say that he had asked the prosecutor to assist him in obtaining the witnesses' addresses, that the prosecutor had provided him with current addresses, and that he (defense counsel)

intended to check the addresses that afternoon.  See 9/7/11 Settlement Conference at pp. 5-6 (ECF No. 20-4, PageID.400-01).

The results of defense counsel's attempt to reach witnesses is not clear from the record, and at trial, he rested his case without presenting any witnesses.  See 9/27/11 Trial Tr. at p. 1280 (ECF No. 20-13, PageID.1704). He may have been unsuccessful in contacting the witnesses, or he may have determined that the witnesses would not help petitioner.  In any event, the record demonstrates that defense counsel was well prepared for trial and competent.  He had a firm grasp of the facts, he made appropriate objections, and despite the lack of defense witnesses, he presented a defense that undermined Seger's credibility and emphasized the lack of evidence regarding the manner and cause of death.

Petitioner's waiver of his right to testify, moreover, provides some insight into the decision not to present any witnesses.   In explaining his decision not to testify, petitioner said that evidence of his past statements and the officers' testimony established his testimony for him.  See id. at p. 1283, PageID.1707.  He also stated that he had conferred sufficiently on that issue with his attorney.  Id.

Petitioner has failed to show that defense counsel's trial strategy was unreasonable.  He also has failed to show that defense counsel was

ineffective for allegedly failing to investigate witnesses.  Appellate counsel, therefore, was not ineffective for failing to raise petitioner's underlying claim about trial counsel.

### b. Failure to Permit Petitioner to Testify in his own Behalf

Petitioner states that he informed defense counsel that he wanted to testify in his own defense and that counsel assured him he could testify, but counsel rested without allowing him to testify.  See Brief in Support of Petition (ECF No. 11-1, PageID.184).  The record, however, indicates that petitioner made a voluntary and informed decision not to testify.  After the prosecution rested its case, petitioner informed the trial court in the jury's absence that he understood his right to testify and his right to remain silent and that he chose not to testify.  He assured the trial court that he had conferred with his attorney, and the reason he gave for not testifying was that his defense had been established through evidence of his prior statements and the officers' testimony.  See 9/27/11 Trial Tr. at pp. 1281-83 (ECF No. 20-13, PageID.1705-07).

Petitioner has not shown that trial counsel prevented him from testifying.   Therefore, appellate counsel was not ineffective for failing to raise petitioner's underlying claim about trial counsel.

### c.  The Right to Counsel and to be Present; Failure to Object

Petitioner alleges next that he was denied his right to counsel and right to be present at a hearing on the prosecution's motion to detain Gary Gage as a material witness.  See 9/9/12 Hr'g Tr. (ECF No. 20-5). Petitioner asserts that his attorney's presence was necessary to learn vital information about the State's case and to better prepare for trial.  See Brief in Support of Pet. (ECF No. 11-1, PageID.186).

"The [Supreme] Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right 'to be present in his own person whenever his presence has a relation,  reasonably substantial, to the fulness of his opportunity to defend against the charge.'"  Stincer, 482 U.S. at 745 (quoting Snyder, 291 U.S. at 105–106).   In addition, "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."  United States v. Cronic, 466 U.S. 648, 658 (1984).  Such circumstances exist when there is a "complete denial of counsel," when "the accused is denied counsel at a critical stage of his trial," and when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing[.]"  Id.

Petitioner has not cited any Supreme Court decision which holds that a defendant in a criminal case has a right to counsel and to be present at a material-witness hearing.   Gage, moreover, did not discuss his potential testimony at the material-witness hearing, and because he was on the prosecution's witness list, see 9/9/11 Motion Hr'g Tr. at p. 5 (ECF No. 20-5, PageID.416), defense counsel may have had other means of determining what Gage would say at trial.

Gage, in fact, took possession of a vehicle previously owned by petitioner and petitioner's wife, and DNA evidence showed that the victim had been in the trunk of the car.  See id.  According to the prosecutor, petitioner himself admitted in one or two of his interviews with law enforcement officials that the victim was in the trunk of the vehicle while he owned it.  Id.

Defense counsel's presence at the material-witness hearing was not necessary to learn vital information about the State's case or to better prepare for trial.  Appellate counsel, therefore, was not ineffective for failing to raise a claim about petitioner and defense counsel being absent from the hearing on detaining Gage.

Petitioner, nevertheless, asserts that defense counsel should have objected to, and refuted, Gage's trial testimony that three years after the

crime, there was still a putrid odor consistent with decomposing flesh in the

trunk of the vehicle that he acquired from petitioner and petitioner's wife.

See Brief in Support of Pet. (ECF No. 11-1, PageID.184-87.)  Lieutenant

David Kirk, however, also testified about a foul odor in the car three years

after the crime, see 9/26/11 Trial Tr. at p. 1172 (ECF No. 20-12,

PageID.1596), and the smell of death was a pervasive theme in the case.

Therefore, trial counsel's failure to object to Gage's testimony about the

odor in his car did not prejudice petitioner, and appellate counsel was not

ineffective for failing to raise the issue on appeal.

### d.  Failure to Object and Impeach a Key Witness

The final claim that petitioner contends his appellate attorney should

have raised alleges that trial counsel was ineffective for failing to make

crucial objections at trial and impeach Seger.  According to petitioner, trial

counsel allowed the prosecutor to convince the jury that Seger did not want

to be blamed for the murder, that Seger did his best to tell the truth, and

that Seger did not initially lie or mislead the police about the victim being at

Seger's apartment.  Petitioner concludes that trial counsel endorsed the

prosecutor's case and enabled the prosecution to do whatever was

necessary to sway the jury, regardless of whether the evidence was

prejudicial, untrue, or scientifically possible. <u>See</u> Brief in Support of Pet. (ECF No. 11-1, PageID.187-89).

The record does not support petitioner's allegations. Defense counsel cross-examined Seger about inconsistencies in his prior testimony and statements to the police and about Seger's failure to implicate petitioner during the early stages of the investigation. Defense counsel also elicited Seger's testimony that he did not accuse petitioner of the homicide until after Seger viewed a video in which petitioner accused Seger of killing the victim. Defense counsel even managed to have Seger admit that he did not actually witness the murder, that he did not know whether the victim overdosed or was strangled, and that he was using drugs at the time of the crime. <u>See</u> 9/26/11 Trial Tr. at 1063-1074, 1076-1087 (ECF No. 20-12, PageID.1487-1498, 1500-1511). And during closing arguments, defense counsel attacked Seger's credibility and described Seger as a liar. <u>See</u> 9/28/11 Trial Tr. at 1379-83, 1387-88 (ECF No. 20-14, PageID.1803-07, 1811-12).

Defense counsel's approach to Seger's testimony and the prosecutor's remarks about Seger did not constitute deficient performance. Therefore, appellate counsel was not ineffective for failing to raise the issue on direct appeal.

### 3.  Summary

Appellate counsel did not act unreasonably in failing to discover and raise petitioner's four claims about trial counsel on appeal, and there is not a reasonable probability that petitioner would have prevailed on direct appeal if his attorney had raised the foregoing issues about trial counsel. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).  Accordingly, petitioner's fourth claim fails.

## E.  Sufficiency of the Evidence (Claim V) and
## Prosecutorial Misconduct (Claim VI)

The fifth habeas claim alleges that petitioner's conviction should be vacated because the State failed to prove the elements of the offense beyond a reasonable doubt.  The sixth and final habeas claim alleges that the prosecutor's misconduct deprived petitioner of his right to a fair trial. Petitioner contends that the prosecutor relied on perjured and unreliable testimony.

The state trial court rejected these claims on state collateral review because petitioner could have raised the claims in the Michigan Court of Appeals on direct appeal and because he failed to show "cause" for his omissions on appeal.  Accordingly, respondent argues that petitioner procedurally defaulted claims five and six.

- 45 -

The state procedural rule in question is Michigan Court 6.508(D)(3),

which reads in relevant part as follows:

> **(D) Entitlement to Relief.**  The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
>
> > . . . .
> >
> > (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> >
> > > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> > >
> > > (b) actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

Petitioner violated this rule by raising his fifth and sixth claims for the

first time in his motion for relief from judgment even though he could have

raised the claims in his appeal of right.  His violation of Rule 6.508(D)(3)

satisfies the first procedural-default factor.

The state trial court was the last state court to issue a reasoned

decision on petitioner's fifth  and sixth claims, and it rejected the claims

because petitioner did not raise the claims on direct appeal and did not show "good cause" under Michigan Court Rule 6.508(D)(3). Because this ruling constituted enforcement of Rule 6.508(D), the second procedural-default factor is satisfied.

The third factor also is satisfied, because Rule 6.508(D) is an adequate and independent ground on which state courts may rely to foreclose review of federal constitutional claims. Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005). Therefore, to prevail on his procedurally defaulted fifth and sixth claims, petitioner must show "cause" for his state procedural error and resulting prejudice.

### 1. "Cause" for the Procedural Default

Petitioner argues in his reply brief and in his fourth claim that his appellate attorney was ineffective for failing to raise his claims about the sufficiency of the evidence and the prosecutor's conduct. See Brief in Support of Pet. (ECF No. 11-1, PageID.177) ("Additionally, the ineffective assistance of appellate counsel extends to his failure to raise issues II and III within the brief.");[2] Response in Opp'n to Respondent's Response (ECF

---

[2] Petitioner's habeas claim about appellate counsel (Claim IV) was the first argument in his applications for leave to appeal in the Michigan Court of Appeals and in the Michigan Supreme Court on state collateral review. And habeas claims V and VI were claims II and III in his applications for leave to appeal on state collateral review. So, his reference to "issues II and III within the brief" appears to be a reference to habeas claims V and VI regarding the sufficiency of the evidence and the prosecutor's conduct.

No. 25, PageID.2452) ("Petitioner argues that ineffective assistance is why the additional issues were not argued on his appeal by right[.]").

Constitutionally ineffective assistance of appellate counsel is "is a well-recognized basis for showing cause and prejudice."  Chase v. MaCauley, 971 F.3d 582, 592 (6th Cir. 2020) (citing Carpenter, 529 U.S. at 451-52).  But to show ineffective assistance of appellate counsel excusing a procedural default, a habeas petitioner must show that appellate counsel's failure to raise a claim rose to the level of a constitutional violation under Strickland.  Id.  In other words, "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial."  Carrier, 477 U.S. at 492.

When assessing whether an appellate attorney's actions prejudiced the petitioner, the Court considers the strength of the claims that appellate counsel failed to raise.  Carter v. Parris, 910 F.3d 835, 841 (6th Cir. 2018) (citing Wilson v. Parker, 515 F.3d 682, 707 (6th Cir. 2008)), cert. denied, 139 S. Ct. 2703 (2019)  If the petitioner's underlying claims are meritless, appellate counsel's failure to raise the claims does not establish cause to excuse a procedural default.  Hoffner v. Bradshaw, 622 F.3d 487, 499 (6th Cir. 2010).

### a. Evidence Supporting the Verdict

Petitioner's fifth claim challenges the sufficiency of the evidence on grounds that the cause of death was never determined and that the prosecution failed to present sufficient evidence that he caused the victim's death.  According to petitioner, the only testimony that placed him at the alleged scene of the crime was Seger's testimony, and Seger's story changed over the years and was untrue.   See Am. Pet. and Brief in Support of Pet. (ECF No. 11-1, PageID.148, 190-193).

A forensic pathologist testified at petitioner's trial that he could not determine the cause and manner of death because the body had been altered significantly and because he did not have enough information about the victim to make a definitive diagnosis.  See 9/22/11 Trial Tr. at 789-90 (ECF No. 20-11, PageID.1213-14).  However, a court reviewing a challenge to the sufficiency of the evidence determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also People v. Harris, 495 Mich. 120, 126; 845 N.W.2d 477, 481–82 (2014) ("In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light

most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.").

In Michigan, "the elements of second-degree murder are as follows: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." People v. Smith, 478 Mich. 64, 70; 731 N.W.2d 411, 414–15 (2007). Petitioner challenges only the second element:  whether there was sufficient evidence that he caused the victim's death.

Seger testified that on July 6, 2000, he, petitioner, and the victim were smoking marijuana in the living room of Seger's apartment. Seger left the living room to use the bathroom because he thought he was going to vomit. The fan was on in the bathroom, and after approximately five to ten minutes, he emerged from the bathroom and saw petitioner lying on the floor on top of the victim. Both petitioner and the victim were lying face down, and petitioner's hands were under the victim's armpits. The victim was motionless and not making any noises. Petitioner then got up, went to his car, and returned with a blanket. He wrapped the victim in the blanket, put her over his shoulder, carried her to his car where he put her in the

trunk, and left in the car.  Seger claimed at trial that he did not intervene at the time because he was afraid.  See 9/26/11 Trial Tr. at pp. 1021-31 (ECF No. 20-12, PageID.1445-55).

For the same reason, Seger did not tell the police what petitioner had done when the police initially contacted him in 2000.  He feared repercussion from petitioner who had previously done some things, and he feared his (Seger's) father who had threatened Seger and other people in the past and had little respect for someone who snitched.  See id. at p. 1021, PageID.1445.

Two weeks after the incident at Seger's apartment, two women who were searching for the victim found her decomposed body in the woods. See 9/20/11 Trial Tr. at pp. 503-12 (ECF No. 20-9, PageID.927-036).  Gary Gage testified that in 2003, he acquired a 1985 Oldsmobile Cutlass that petitioner used occasionally when petitioner was married to Gage's sister-in-law.  Gage used to work in a cemetery, and he stated that the car smelled like something dead had been in it for a while.  The odor was strongest in the trunk, and shortly after he informed petitioner that a detective wanted to search the vehicle, petitioner left for California.  See 9/21/11 Trial Tr. at pp. 589-98 (ECF No. 20-10, PageID.1013-22).

Randall Tarolli was living in the same apartment complex as petitioner in July 2000, and he also noticed the odor in the car that petitioner drove.  However, when he asked petitioner about the smell, petitioner said that it was garbage, and he refused Tarolli's offer to help throw the garbage in a nearby receptacle because he did not want to get dirty.  See id. at pp. 604-610, PageID.1028-1034.

Petitioner lived with Richard Wisenbaugh, Jr., for about a month during the summer of 2000.  One day when petitioner had moved back into his own apartment, Wisenbaugh went to petitioner's apartment to buy marijuana.  There was a putrid stink in the apartment, and even though petitioner stated that the sewer had backed up, Wisenbaugh knew that the smell was not from the sewer.  Also, during petitioner's small talk with Wisenbaugh, he asked Wisenbaugh whether Wisenbaugh would use muriatic acid or trypto chloride if he were trying to get rid of somebody.  Wisenbaugh told petitioner that would not work because it would not dispose of bones or teeth.  Wisenbaugh then became upset with petitioner for having him there while something was going on.  He did not suspect petitioner of the victim's murder at the time, but he started to distance himself from petitioner and several other people after that incident.  See id. at pp. 717-23, PageID.1141-47.

- 52 -

Petitioner was arrested on April 11, 2011.  See 9/26/11 Trial Tr. at p.1183 (ECF No. 20-12, PageID.1607).   Jose Garcia met petitioner on April 26, 2011, when both men were being transferred from one prison to another prison.  Petitioner told Garcia that his parole had been taken from him because he was accused of a murder that happened eleven years earlier.  Petitioner then sarcastically explained to Garcia that he had put a girl to sleep in Shiawassee County after the girl refused to have sex with him and that the girl was found three weeks later.  See id. at pp. 1095-1101, PageID.1519-25.

Lieutenant Kirk contacted the Department of Corrections and verified that Garcia and petitioner had been together on April 26, 2011.  See id. at p. 1185, PageID.1609.  Kirk also testified that during a consent search of Gary Gage's car in November 2003,  he smelled a foul odor in the trunk of the car, and he noticed some hair sticking out of the rubber grommet that held the taillight in place.  When he disassembled the taillight, he discovered some body tissue about the size of a nickel or dime, and an earring dropped out of the taillight where the hair was located.  See id. at pp.1171-74, PageID.1595-98.

An expert witness testified that some of the hairs found in the light socket of the car were like the victim's hair.  See 9/21/11 Trial Tr. at 693-

94, 712-13 (ECF No. 20-10, PageID.1117-18, 1136-37).  And an expert in

mitochondrial DNA analysis testified that the victim could not be excluded

as a source of the hair found in the trunk of the car, but petitioner and his

former wife could be excluded.  See 9/22/11 Trial Tr. at pp. 837-39, 843-44

(ECF No. 20-11, PageID.1261-63, 1267-68).

A rational juror could have concluded from the evidence taken in the

light most favorable to the prosecution that petitioner murdered the victim

and that the prosecution proved its case beyond a reasonable doubt.

Therefore, petitioner's sufficiency-of-the-evidence claim lacks merit, and

appellate counsel was not ineffective for failing to raise the claim on appeal.

Because appellate counsel was not ineffective, he was not "cause" for

petitioner's failure to raise his claim on direct appeal.

### b.  The Prosecutor's Reliance on Three Witnesses

Petitioner's sixth claim concerns three prosecution witnesses.  First,

petitioner alleges that the prosecutor relied on perjured testimony from

Seger.  See Brief in Support of Pet. (ECF No. 11-1, PageID.196).   Next,

petitioner asserts that the prosecutor should not have introduced Garcia's

testimony because Garcia (i) used information from the news media and

claimed that it came from petitioner, (ii) admitted to an expectation of

leniency from the parole board in exchange for his testimony, and (iii)

claimed that the victim's death occurred two days earlier than the actual time of death.  See id. at PageID.199.  Finally, petitioner asserts that the prosecutor should not have introduced Gage's testimony because it was scientifically impossible for an odor of decaying flesh to be in the trunk of the car that he acquired from petitioner three years after the victim's death. See id.

Prosecutors may not deliberately deceive a court and jurors by presenting evidence that is known to be false.  Giglio v. United States, 405 U.S. 150, 153 (1972) (citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)).  Prosecutors also may not allow false evidence to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959).  But "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony," United States v. Lochmondy, 890 F.2d 817, 822 (6th Cir. 1989), and petitioner has not established that Seger perjured himself at trial.  Instead, the record demonstrates that law enforcement officials pursued many leads and that the evidence continued to point to petitioner and Seger as suspects.  Petitioner's version of the facts, however, changed during his various interviews with law enforcement officials, and Lieutenant Kirk was not able to find support for it.  In contrast, Seger's story remained consistent and was supported by other evidence.

See 9/27/11 Trial Tr. at pp. 1255-57, 1264 (ECF No. 20-13, PageID.1679-81, 1688).  Thus, there is no support for petitioner's assertion that the prosecutor relied on perjured testimony.

As for Garcia, there was no evidence that he acquired information about the murder from the news media.  During an interview with Lieutenant Kirk, he identified petitioner in a photo as the man that he had talked to during an institutional transfer.  See 9/26/11 Trial Tr. at pp. 1114-15, (ECF No. 20-12, PageID.1538-39).  And at trial, Garcia testified that he had not read about the homicide, did not know petitioner's name, and had not previously heard the victim's name.  See id. at p. 1102, PageID.1526.

The record also does not support petitioner's contention that Gage's testimony was unreliable simply because Gage testified about an odor that was present in a car which he acquired from petitioner three years after the victim's death.  While this testimony may have seemed implausible, Gage was not a suspect in the case, and he claimed that he tried, but was unable, to get rid of the smell in the vehicle.  See 9/21/11 Trial Tr. at p. 594 (ECF No. 20-10, PageID.1018).

Lieutenant Kirk, moreover, corroborated Gage's testimony on this issue when he testified that he noticed the odor during a search of the vehicle more than three years after the victim's death.  See 9/26/11 Trial Tr.

at pp. 1171-73 (ECF No. 20-12, PageID.1595-7).  Kirk also discovered a small piece of human tissue during his search of the vehicle, and DNA from hair found near the human tissue was linked to the victim.  The jury could have inferred that the human tissue was the reason for the foul odor that existed in the vehicle three years after the crime.

Finally, the credibility of Seger, Garcia, and Gage went "to the weight of the evidence, not the sufficiency," United States v. Gibbs, 182 F.3d 408, 425 (6th Cir. 1999), and the "Constitution leaves it to the jury . . . to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence."  Ramonez v. Berghuis, 490 F.3d 482, 490 (6th Cir. 2007); see also Gunning v. Cooley, 281 U.S. 90, 94 (1930) ("Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury.").

Petitioner's argument about the prosecutor's reliance on the testimony of Seger, Garcia, and Gage lacks merit.  Therefore, appellate counsel's failure to raise the issue on appeal did not amount to ineffective assistance of counsel, and appellate counsel was not "cause" for petitioner's failure to raise the claim on direct appeal.

## 2. Prejudice and Miscarriage of Justice

The Court need not determine whether the alleged constitutional errors prejudiced petitioner, because he has failed to show "cause" for his failure to comply with state law. Simpson, 238 F.3d 399, 409 (6th Cir. 2000). Petitioner also has not shown that a fundamental miscarriage of justice will occur if the Court does not adjudicate the substantive merits of his fifth and sixth claims. Therefore, the fifth and sixth habeas claims are procedurally defaulted, as all the four procedural default factors are satisfied.

## V. Conclusion

Petitioner's second, fifth, and sixth claims are procedurally defaulted, and the state appellate court's adjudication of his first and third claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The Court reviewed petitioner's fourth claim de novo and found no merit in it. For all these reasons, the Court denies the amended petition for a writ of habeas corpus.

The Court declines to issue a certificate of appealability because petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists

could not disagree with the Court's resolution of petitioner's constitutional claims, nor conclude that petitioner's claims deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Petitioner, nevertheless, may proceed in forma pauperis on appeal if he appeals this decision, because he was permitted to proceed in forma pauperis in this Court, and an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Dated:  September 9, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 9, 2021, by electronic and/or ordinary mail and also on Laurencio Rodriguez #649211, Marquette Branch Prison, 1960 U.S. Hwy 41 South, Marquette, MI 49855.

s/Brianna Sauve
Deputy Clerk